## A05A1497. EVANS v. THE STATE.
(619 SE2d 341)

JOHNSON, Presiding Judge.

Jamey Evans was charged by accusation with driving under the influence of drugs[1] and with failing to keep Demerol pills in their original container.[2] Evans pled not guilty to the charges and moved to suppress evidence of laboratory test results showing the presence of methamphetamine in his urine. He subsequently waived his right to a jury trial and agreed that the evidence presented at the hearing on his motion to suppress could also serve as the evidence for his trial before the judge sitting without a jury.

At the combined suppression hearing and bench trial, the state presented three witnesses and several exhibits. Evans introduced no evidence. After hearing the testimony and arguments of counsel, the trial court denied Evans' motion to suppress evidence of the laboratory test results, finding that Evans had been arrested, had been given the implied consent notice and had then consented to tests of his blood and urine. The court then found Evans guilty of driving under the influence of drugs, but not guilty of failing to keep Demerol pills in their original container. The court sentenced Evans to serve 12 months of probation.

Evans appeals from his conviction. His sole enumeration of error is that the trial court erred in denying his motion to suppress evidence. In reviewing the denial of Evans' motion to suppress, we must construe the evidence most favorably to uphold the trial court's findings and judgment.[3]

So construed, the evidence shows that at approximately 5:30 p.m., on August 27, 2003, Evans was involved in a one-car accident in the city of Rome. He was driving a Toyota Camry out of a parking lot and apparently failed to stop at a stop sign before entering Riverbend Drive, a four-lane road. Rather than turning onto the road, however, Evans sped directly across the four lanes of traffic and into a construction area beside the road, where he came to an abrupt stop on a pile of dirt.

A short time later, emergency medical personnel arrived at the scene, followed by a Rome police officer. When the officer got there, Evans' wife, who had been a passenger in the car, was standing outside the vehicle and was hysterical. Evans, who had blood on his face, was thrashing about and screaming as the emergency medical

---

[1] OCGA § 40-6-391.
[2] OCGA § 16-13-75.
[3] *Brittian v. State*, 257 Ga. App. 729-730 (572 SE2d 76) (2002).

personnel attempted to put him on a stretcher. They eventually got Evans onto the stretcher, placed him in restraints and transported him to the hospital.

The officer inspected the car, inside which he found an unlabeled pill bottle containing three pills that he did not recognize. The officer then went to the hospital, where he found that Evans was still in restraints, but was calmer and more rational than he had been at the accident scene. Based on the circumstances of the one-car accident, Evans' behavior at the scene and the pills found in the car, the officer suspected that Evans had been driving under the influence of drugs.

The officer told Evans that he could either get a warrant for his arrest or he could effectuate the arrest by writing Evans a citation. The officer decided not to wait to obtain an arrest warrant, and instead decided to arrest him in the hospital pursuant to a uniform traffic citation. But before writing the citation, the officer read the implied consent notice to Evans, who then consented to tests of his blood and urine. Samples of Evans' blood and urine were obtained and later tested at the state crime laboratory. The blood tests were negative, but Evans' urine tested positive for methamphetamine.

After having obtained Evans' consent to the tests, the officer wrote the citation for driving under the influence of drugs and gave it to Evans. The officer then left the hospital, where Evans remained for further treatment. The officer had no further contact with Evans.

On appeal, Evans contends that an arrest must precede the reading of the implied consent notice. He claims that he was never physically arrested or booked into jail. If any arrest occurred at all, he reasons, it was when the officer wrote the citation, which took place after the officer had already read the implied consent notice to him. The trial court therefore erred in finding that he was under arrest at the time of the implied consent notice, that his consent to the testing of his blood and urine was valid, and that evidence of those test results was admissible. Evans' argument is flawed in three respects.

First, his claim that he was never physically arrested or booked into jail is disingenuous and contradicted by the record. During the sentencing phase of his bench trial, Evans' attorney, who is the same attorney representing him in this appeal, sought to have the trial court give Evans credit for time already served on the DUI charge by telling the court that Evans had been held in jail for 21 hours before being released on bond. Moreover, the record contains a copy of a receipt from the Floyd County detention center showing that at 5:50 p.m., on August 28, 2003, Evans posted a bond of $1,200.

Given the in-court representations of Evans' attorney, plus the copy of the jail receipt, it is apparent that some time during the evening of August 27, 2003, Evans was released from the hospital and

taken to the county jail; that he was booked into the jail at approximately 9:00 p.m.; that he remained in custody for approximately 21 hours; and that just before 6:00 p.m., on August 28, he posted a $1,200 bond and was released from jail. Thus, despite Evans' claim to the contrary, it is clear from the record that he was in fact booked into jail on the DUI charge shortly after his release from the hospital.

Second, there is evidence to support the trial court's finding that the officer arrested Evans before reading the implied consent notice to him. According to the officer's testimony, when he arrived at the hospital he suspected Evans of driving under the influence of drugs and had decided to arrest him for that offense. He then discussed with Evans two ways that he could arrest him — either by obtaining an arrest warrant or by issuing him a citation. Thereafter, he gave Evans the implied consent notice.

"A person is under arrest if he is not free to leave and a reasonable person in his position would not think that the detention was temporary."[4] We agree with the trial court that at the point where the officer was explaining to Evans the different options for arresting him, a reasonable person would have realized that he was not free to leave. Since the trial court's finding that Evans was under arrest prior to receiving the implied consent warning is supported by some evidence, we may not disturb it.[5]

Third, contrary to Evans' claim, an arrest does not necessarily have to precede the reading of the implied consent notice. Rather, the controlling rule of law is that "the implied consent warning must be given at the time of the arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant."[6] In this case, the police officer testified unequivocally that he arrested Evans, and issued him the DUI citation, in the hospital. Even if we assume for the sake of argument that this arrest formally occurred shortly after the reading of the implied consent warning, when the officer issued the citation to Evans, the warning was sufficiently close in proximity to the instant of arrest to be valid.[7] The trial court therefore did not err in denying Evans' motion to suppress.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

---

[4] (Citation and punctuation omitted.) *Ross v. State*, 255 Ga. App. 462, 464 (566 SE2d 47) (2002).

[5] *Brittian*, supra.

[6] (Citation and punctuation omitted.) *Crawford v. State*, 246 Ga. App. 344, 345 (1) (540 SE2d 300) (2000).

[7] Id. (implied consent warning given shortly before formal arrest was timely). Compare *Handschuh v. State*, 270 Ga. App. 676, 678 (1) (607 SE2d 899) (2004) (implied consent notice given six days before arrest not timely), cert. granted, 2005 Ga. LEXIS 245 (March 28, 2005).

DECIDED JULY 29, 2005.

*Fred R. Simpson*, for appellant.
*Leigh E. Patterson, District Attorney, C. Stephen Cox, Assistant District Attorney*, for appellee.